UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

BIG EAST ENTERTAINMENT, INC.,

               Plaintiff,

    - against -

ZOMBA ENTERPRISES, INC.,

               Defendant.

----------------------------------------X

04 Civ. 10008 (RWS)

O P I N I O N

A P P E A R A N C E S:

    CINQUE & CINQUE
    Attorneys for Plaintiff
    845 Third Avenue, Suite 1400
    New York, NY 10022
    By:  JAMES P. CINQUE, ESQ.
        Of Counsel

    MANATT PHELPS & PHILLIPS
    Attorneys for Defendant
    Seven Times square, 22nd Floor
    New York, NY 10036
    By:  STEVEN M. HAYES, ESQ.
        LISA G. HORWITZ, ESQ.
        Of Counsel



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9 28 06

**Sweet, D.J.,**

The defendant Zomba Enterprises, Inc. ("Zomba" or the "Defendant") has moved pursuant to Rule 56, Fed. R. Civ. P., for summary judgment dismissing the complaint of plaintiff Big East Entertainment, Inc. ("Big East" or the "Plaintiff") alleging causes of action for copyright infringement and an accounting. Big East has cross-moved for summary judgment. For the reasons set forth below, the motion of Zomba for summary judgment is granted, and the cross-motion of Big East is denied.

This fifteen year old controversy involves the rights to musical compositions created twenty years ago. It now arrives for disposition because of recent interest in at least one of the compositions. The nature of the parties and the passage of time have made it difficult to obtain an accurate assessment of some of the issues but as described below that difficulty does not prevent a disposition.

## Prior Proceedings

Big East filed its complaint on December 20, 2004. Issue was joined and discovery undertaken.

The instant motions were heard and marked fully submitted on June 14, 2006.

1

**The Facts**

The material facts are set forth in Zomba's Statement Pursuant to Local Civil Rule 56.1 and Big East's Local Civil Rule 56.1 Statement and are not in dispute except as noted below.

**The Parties**

Big East is a record distribution corporation wholly owned by Jack Allen ("Allen"). According to Big East, it is the successor in interest to B-Boy Records, Inc., Rock Candy Records and Rock Candy Music, all of which were wholly owned by Allen. A certificate of incorporation of Big East Entertainment, Inc. was filed with the Department of State, State of New York, on March 20, 2002. No certificates of merger are on file. There is no corporation incorporated in Delaware with the name of Big East.

Zomba is a music publishing company which owns and administers copyright interests in certain musical compositions by the recording artists known as Boogie Down Productions ("BDP"). BDP was comprised of Scott Sterling ("Sterling") and Lawrence J. Parker ("Parker").

2

## The Agreements In The Prior Litigation

On May 20, 1986, the members of BDP signed a recording contract with Rock Candy Records ("Rock Candy"), a record distribution corporation owned by Allen ("1986 Artist Agreement").

Pursuant to the 1986 Artist Agreement, Rock Candy obtained ownership of the copyrights in the master recordings of any songs recorded by BDP under the contract and in exchange Rock Candy was to pay BDP royalties.

While under contract with Rock Candy, BDP wrote, composed, performed, and recorded an album entitled "Criminal Minded." When the "Criminal Minded" album was released by Rock Candy in 1986 or 1987, Rock Candy claimed publishing rights by its credit on the label of the album. All songs on the "Criminal Minded" album were jointly written by Parker and Sterling.

The members of BDP had never entered into a professional music contract before and were not represented by counsel when they entered into the 1986 Artist Agreement. Allen had been in the music business since approximately 1970. He presented the Agreement to BDP and explained to them what it meant. William Kamarra ("Kamarra") signed the Agreement on behalf of Rock Candy. According to Allen, Kamarra worked for him in 1986 and was not an owner of Rock Candy or any other company controlled by Allen.

3

Allen is aware that Kamarra claims to be a part-owner of Rock Candy and other companies affiliated with Allen.

The 1986 Artist Agreement stated in relevant part that:

all musical compositions written and/or composed by [BDP] which are recorded by [BDP] pursuant to this Agreement shall be co-published between [BDP's] publishing company to be designated and [Rock Candy's] music publishing affiliate to be designated pursuant to a co-publishing agreement entered into simultaneously herewith.

(1986 Artist Agreement, ¶ 8).

The 1986 Artist Agreement does not contain any terms relating to this purported co-publishing agreement.

According to Allen, the co-publishing agreement was in fact executed and, according to its terms, Rock Candy owned 50% of the copyrights in the musical compositions, and BDP owned the other 50%. Allen has testified that the co-publishing agreement was lost in a fire at his office, that he no longer has a copy of it, and that, in connection with producing documents in this case, he contacted the office of the attorney who allegedly drafted the co-publishing agreement, but did not request that the office make any effort to search its files for the purported co-publishing agreement.

4

Parker does not recall ever entering into a co-publishing agreement with Rock Candy.

Parker gave all the agreements he had in his possession in 1987 to Jay D. Kramer ("Kramer"), his counsel at that time, who does not recall ever seeing a co-publishing agreement. Kramer has testified that throughout all his years of communications with Allen on behalf of Parker, Allen never once claimed that this co-publishing agreement was ever executed, or even existed. No letter on behalf of Big East or any other company affiliated with Allen mention this purported co-publishing agreement.

According to Big East, it is standard and customary in the music industry that a co-publishing agreement would give the publisher the right to administer the compositions (i.e., issue licenses and collect income) and to own a 50% interest in the copyrights.

In 1987, BDP sued Rock Candy and Allen, along with other individuals and companies affiliated with Allen, in the Supreme Court, County of New York, State of New York, because BDP believed that Allen had taken advantage of them and treated them unfairly under the 1986 Artist Agreement.

The complaint alleged that Rock Candy had a co-publishing interest in the compositions they wrote for the "Criminal Minded"

5

album (Complt. ¶¶ 13, 25, 29, 31(b) and 32) and requested that the copyrights in the Criminal Minded compositions be returned to them, and alleged that Rock Candy was a "co-publisher of the musical compositions on plaintiffs' recordings." (Complt. ¶ 29).

On November 19, 1987, the lawsuit was resolved in a settlement agreement (the "1987 Settlement Agreement") between Parker and the other members of BDP on the one hand, and "Jack Allen, William Kamarra, Ray Wilson, individually and d/b/a J & B Management Company, Rock Candy Records, Rock Candy Music, Sweetheart Distribution Corp., and Jam City One Stop," (collectively, the "Allen Defendants"). Rock Candy Music and Sweetheart Distribution Corp. are corporations of which Allen is sole owner. Jam City One Stop is not a corporation, but rather a business name that Allen never used.

Pursuant to the 1987 Settlement Agreement, the 1986 Artist Agreement was "terminated." In exchange, "Rock Candy Records on behalf of all of the Defendants" received $125,000 cash plus override royalties in future BDP albums. Zomba Recording Corporation ("ZRC") paid Rock Candy the $125,000 compensation on behalf of BDP pursuant to an Override Agreement that was executed simultaneously with the 1987 Settlement Agreement.

In the November 19, 1987 override agreement, Zomba Recording Corp. ("ZRC") acknowledged that the parties:

6

are contemporaneously entering into an exclusive
recording agreement and our sister company [defendant]
Zomba Enterprises, Inc. is entering into an exclusive
publishing agreement with Lawrence Parker p/k/a Boogie
Down Productions ("the Artist") and you [Jack Allen and
his companies] and Artist are releasing the other from
their respective obligations under the exclusive
agreement dated May 20, 1986 between you and also from
the litigation commenced in relation thereto between the
Artist and you (index no.: 87/25130) ...

(Ex. 5 to Allen Decl.).

The 1987 Settlement Agreement provided that the Allen
Defendants "shall retain the right to distribute and exploit the
recordings embodying the performances of [BDP] and musical
compositions written by [BDP] performed in the recordings listed in
Schedule 'A' annexed hereto only." (1987 Settlement Agreement ¶
1).

BDP also "waive[d] any and all royalties and/or other
payments, including so-called performance and mechanical license
payments, heretofore and hereafter accruing as may be due [BDP]
from [the Allen Defendants] of recordings embodying the performance
of [BDP] and musical compositions written by [BDP] on the
recordings listed in Schedule 'A' Annexed hereto." (1987
Settlement Agreement ¶ 3).

The 1987 Settlement Agreement did not address copyright
ownership of the compositions at issue. Paragraph five provided
that BDP "retained solely and exclusively unto themselves and their

licenses full right, title and interest in the tradename Boogie Down Productions" and only allowed the Allen Defendants to use the name "in connection with the recordings listed in Schedule 'A' annexed hereto." Schedule A lists nine songs from the "Criminal Minded" album and two other songs -- "The P is Free," and "Bride I."

Parker and Zomba, an affiliate of ZRC, entered into a co-publishing agreement on November 23, 1987 ("Zomba Publishing Agreement") which provided that Zomba possessed all Parker's ownership interests and stated that the musical compositions embodied on the "Criminal Minded" album were committed by a written agreement to a third party (Zomba Publishing Agreement ¶ 1(a)).

## Plaintiff Discovers Zomba's Ownership Claim

In 1991, Allen "found out that [Zomba] was claiming ownership" of the "Criminal Minded" compositions. (Allen Dep. at 86-87). Through third-party companies seeking licenses in the "Criminal Minded" master recordings, Allen was informed that "Zomba owns the publishing end of the ["Criminal Minded" album]. Zomba obtained copyright registrations in the "Criminal Minded" compositions dated January 26, 1996.

Allen testified that he was told by the U.S. Copyright Office itself sometime during the 1990's that Zomba "owned the

8

copyrights; that we couldn't submit a copyright because it was already owned by Zomba."

Since approximately 1991, Allen wrote several letters to Zomba and had several conversations with Zomba representatives regarding his companies' purported rights in the "Criminal Minded" compositions.  (Allen Dep. at 96).  In a letter dated July 16, 1992, Allen writes that he is aware that Zomba is claiming to "control[] 100% of the publishing on all of the songs of the album "Criminal Minded," that Rock Candy and B-Boy "still own the 2" master" of this album, and requested that Zomba inform them about any sales of the recordings.  (Hayes Dec. Ex. E).

In a letter dated June 29, 1995, Allen again wrote to Zomba in his capacity as "President/CEO" of Big East claiming, "Parker has no right to sign any publishing agreement" with Zomba for the "Criminal Minded" compositions because, pursuant to the 1987 Settlement Agreement, Big East "retain[ed] all ownership [and] writer's share of publishing and royalties" of the "11 recordings" listed in the 1987 Settlement Agreement, and demanded that Zomba remit any publishing funds it received from the "Criminal Minded" compositions to Big East.  (Hayes Dec. Ex. F).

In January 1996, Allen retained a third-party music publisher named Tonya Payton ("Payton") to help him "resolve this problem."  Payton wrote a letter dated January 17, 1996 to Zomba on

9

behalf of Big East claiming that pursuant to the 1987 Settlement Agreement, Big East "retained all rights" in the "Criminal Minded" album, including "copyrights" (Hayes Dec. Ex. G), and that Zomba "has been named as Publisher to the "Criminal Minded" albums." (Id.) and that Zomba pay "what is duly owed" to her client and advises that she and her clients "do not wish to go into litigation on these issues."

In 2000, an attorney wrote a letter on behalf of Bun Bun Music, another corporation wholly-owned by Allen, to the American Society of Composers, Authors and Publishers ("ASCAP") requesting that ASCAP release any "royalties currently being held in suspense" for the "Criminal Minded" compositions to Allen based upon the 1987 Settlement Agreement.  (Hayes Dec. Ex. H).

Kramer, counsel to Parker, wrote a letter to Allen and Big East dated December 12, 1995, stating that Kramer and Allen "have been over this many times," and that Parker owns the composition "South Bronx" which is on the "Criminal Minded" album. (Hayes Dec. Ex. I).    Allen received two certificates of registration dated January 22, 1999 in the name of B-Boy Records, Inc. for the compositions "Criminal Minded," "Poetry," "South Bronx," and "9mm Goes Bang," and for the compositions in an album entitled "Man And His Music," which contains the same compositions as the "Criminal Minded" album, but with different mixes.

10

Copyright registration certificate PA 934-688 issued to
B-Boy Records are for the "Criminal Minded" compositions, entitled:
"Criminal Minded," "Poetry," "South Bronx," "9mm Goes Bang," "Word
From Our Sponsor," "Elementary," "Dope Beat," "Remix For P Is
Free," "The Bridge Is Over," and "Super-Hoe." According to Allen,
B-Boy Records was merged into Big East, another company wholly-
owned by Allen as successor in interest to the other companies
owned by Allen and the umbrella company in control. (Hayes Dec. Ex
L, p. 68).

According to Allen, he owned all of the stock in Rock
Candy and B-Boy Records, which were dissolved when they merged into
Big East in 2002.

Zomba licensed "South Bronx," one of the "Criminal
Minded" compositions in 2002 for a popular Jennifer Lopez song
entitled "Jenny From The Block," which was included in her album
entitled "This Is Me...Then" and has received approximately
$220,000 from its licensing of the "Criminal Minded" compositions,
approximately $150,000 of which was received in the last three
years.

Allen has testified that Big East was not assigned the
purported copyrights in the "Criminal Minded" compositions by B-
Boy, Rock Candy, or any other individual or entity affiliated with

11

Allen and that each corporation, Big East, Rock Candy, and B-Boy, has its own stock.   (Allen Dep. 69-70).

## The Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is mandated where there exists no "genuine" issue of "material" fact; a dispute over irrelevant or unnecessary facts will not preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).   "The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Serv., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).   "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Id. at 1224 (citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)).

A party opposing summary judgment cannot demonstrate the existence of a genuine issue of material fact merely with conclusory denials of the moving party's allegations.   As this Court has recognized, "[t]he Court is 'to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative.'"   Gemmy Industries

12

Corp. v. Chrisha Creations Ltd., 04 Civ. 1074, 2004 WL 1406075, at
*6 (S.D.N.Y. June 23, 2004) (internal quotations omitted). If the
non-moving party "fail[s] to make a sufficient showing on an
essential element of [its] case with respect to which [it] has the
burden of proof," then "the moving party is entitled to judgment as
a matter of law." Celotex, 477 U.S. at 322-23.

## The Statute Of Limitations Bars The Claim Of Big East

Civil actions brought pursuant to the Copyright Act are
subject to a three-year statute of limitations. 17 U.S.C. §
507(b). Under settled Second Circuit precedent, plaintiffs are
"time-barred three years after accrual of their claim from seeking
a declaration of copyright co-ownership rights and any remedies
that would flow from such a declaration." Merchant v. Levy, 92
F.3d 51, 56 (2d Cir. 1996). The three-year statute of limitations
also applies to plaintiffs "seeking a declaration of sole
ownership." Barksdale v. Robinson, 211 F.R.D. 240, 244 (S.D.N.Y.
2002); see Newsome v. Brown, 01 Civ. 2807, 2005 WL 627639 at *5-6
(S.D.N.Y. March 16, 2005) (dismissing copyright infringement claims
where "essence of the claim . . . is that [plaintiff] is claiming
sole ownership"); Minder Music Ltd. v. Mellow Smoke Music Co., 98
Civ. 4496, 1999 WL 820575, at *1-2 (S.D.N.Y. Oct. 14, 1999)
(applying three-year statute of limitations to copyright
infringement claim where "[p]laintiff contends that defendants'

13

chain of title is invalid and that plaintiff is the sole owner of the Copyrights").

Copyright ownership claims accrue "when a plaintiff knows or has reason to know of the injury upon which the claim is premised." Merchant, 92 F.3d at 56; see Barksdale, 211 F.R.D. at 244. Thus, this Court has ruled that "[a]n express assertion of sole authorship or ownership will start the copyright statute of limitations running." Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. 1308, 1315 (S.D.N.Y. 1997).

Allen learned that Zomba claimed ownership of the "Criminal Minded" compositions as early as 1991 and was advised by third-party companies seeking licenses in the "Criminal Minded" master recordings that "Zomba owns the publishing end of the ["Criminal Minded" album]." (Allen Dep. 87-88). In 1995, Allen wrote to Zomba on behalf of Big East claiming that "Parker has no right to sign any publishing agreement" with Zomba for the "Criminal Minded" compositions because, pursuant to the 1987 Settlement Agreement, Big East "retain[ed] all ownership [and] writer's share of publishing and royalties" of the "11 recordings" listed in the 1987 Settlement Agreement. (Hayes Dec. Ex. F). Allen testified that sometime in the 1990's, the U.S. Copyright Office informed him that Zomba owned the copyrights and that Allen couldn't submit a copyright because the copyright was already owned by Zomba. Big East again wrote to Zomba in 1996. This time, Big

14

East claimed that under the 1987 Settlement Agreement, Big East
"retained all rights" in the "Criminal Minded" album, including
copyrights.   (Hayes Dec. Ex. G).   Since 1991, Kramer repeatedly
advised Allen that neither Allen nor his companies own the
copyrights in the "Criminal Minded" compositions.   Because Big East
failed to file this action until December 2004, more than thirteen
years after its sole shareholder and predecessors in interest knew
of the injury upon which the claim is premised, the action is time-
barred.   See Minder Music Ltd., 1999 WL 820575, at *2 (dismissing
copyright action as time-barred when "plaintiff could have
investigated the merits of defendants' ownership claim" seven years
before instituting an action); Barksdale, 211 F.R.D. at 245
(dismissing copyright claims as time-barred when plaintiff's cease
and desist letters demonstrated that plaintiff knew of claim
approximately three and a half years before filing suit).

According to Big East, "it is the sole owner of the
copyrights, and there is no claim of co-authorship." (Pl's. Mem.
in Opp. at 21).

Ownership is, therefore, the essential issue.   In Minder
Music Ltd. v. Mellow Smoke Music Co., 98 Civ. 4496, 1999 WL 820575
at *1-2 (S.D.N.Y. Oct. 14, 1999), the issue was ownership, but not
co-authorship, as the claims of each of the parties to their
respective ownership rights were based upon transfers of publishing
interests.   The court stated:

> Although plaintiff attempts to portray its claim as one
> for an ongoing infringement, it has been established that
> the statute of limitations cannot be defeated by
> portraying an action as one for infringement when
> copyright ownership rights are the true matter at issue.
> See Netzer v. Continuit v. Graphic Assocs., Inc., 963 F.
> Supp. 1308, 1315 (S.D.N.Y. 1997) . . . Plaintiff's claim
> accrued when it knew or had reason to know of the injury
> upon which the claim is premised. See Stone v. Williams,
> 970 F.2d 1043 (2d Cir. 1992).

Minder Music, 1999 WL 82075, at *2.

Although Allen asserted an ownership claim on behalf of
Rock Candy at various times after 1991, including in a letter to
Zomba in 1995, he failed to act within the three-year statute of
limitations. In Minder Music Ltd., supra, the court declared that:

> This action disputes copyright ownership rights that have
> been uncontested for twenty-four years, and seeks relief
> against a party who appears to be a good faith purchaser
> of those rights. The Court finds that dismissal of the
> action "'promotes the principles of repose integral to a
> properly functioning copyright market' [and] is also
> consistent with the Supreme Court's recognition that
> 'Congress' paramount goal in revising the 1976 [Copyright
> Act was] enhancing predictability and certainty of
> copyright ownership.'" See Netzer, 963 F. Supp. at 1315
> (S.D.N.Y. 1997) (quoting Merchant, 92 F.3d at 56 and
> Community for Creative Non-Violence v. Reid, 490 U.S.
> 730, 749 (1989)).

Minder Music, 199 WL 820575, at *3. This principle of repose of
copyright and the public policy of enhancing the predictability of
copyright ownership apply with equal force here.

16

Big East also attempts to avoid the bar of the statute of limitations by claiming that this case is controlled by the decision in Carell v. Shubert Organization, Inc., 104 F. Supp. 2d 236 (S.D.N.Y. 2000). That decision (which resulted from a motion to dismiss, not a summary judgment motion) permitted the creator of copyrightable material to sue for copyright infringement even though she sat on her rights for more than a decade. In Carell, supra, the plaintiff had a valid copyright registration in certain designs for makeup on the performers of the musical "Cats." The defendants in that case denied her claim to sole ownership of the copyrights in those designs, but, unlike Zomba here, never filed a copyright registration of their own for the makeup designs (although they had filed other registrations). Here Zomba filed and obtained a copyright registration for the compositions in 1996. Rock Candy did not register until 1999. Thus, unlike Carell, this is a case where Zomba obtained a valid copyright registration before the party through whom plaintiff claims its rights.

In Carell, the declaratory judgment claim of ownership was for sole ownership because a question existed whether or not another individual had co-authored the material (the plaintiff in that case had tried to file an amended registration showing the other individual as a co-author):

> Pursuant to section 507(b) of the Copyright Act, a plaintiff seeking a declaration of copyright co-ownership must commence an action within three years of the accrual of the claim. See Merchant v. Levy, 92 F.3d 51, 56 (2d

17

Cir. 1996). Courts in this district have extended this
rule to parties seeking a declaration of sole ownership.
See, e.g., Minder Music Ltd. v. Mellow Smoke Music Co.,
No. 98 Civ. 4496 (AGS), 1999 WL 82075, at *2 (S.D.N.Y.
Oct. 14, 1999) (applying the three-year limitations
period to plaintiff's assertion of sole ownership); Aday
v. Sony Music Entertainment, Inc., No. 96 Civ. 0991, 1997
WL 598410, at *3-5 (S.D.N.Y. Sept. 25, 1997) (same); Fort
Knox Music Inc. v. Baptiste, 47 F. Supp. 2d 481, 483-84
(S.D.N.Y. 1999), remanded on other grounds (applying the
three-year limitations period in declaratory judgment
action to bar defendant songwriter from asserting sole
ownership). Copyright claims begin to accrue when the
plaintiff "knows or should have known of the injury on
which the claim is premised." Merchant, supra, 92 F.3d
at 56.

Carell, 104 F. Supp. 2d at 248-49.

Big East has based its infringement claim entirely upon
its alleged ownership of these compositions. By virtue of Zomba's
prior copyright registration and the failure of Big East and its
predecessor in interest to act for over a decade, ownership or
infringement claims are time-barred.

## Big East Has Failed To Establish Its Standing

The Copyright Act provides that "the legal or beneficial
owner of an exclusive right under a copyright is entitled . . . to
institute an action for any infringement of that particular right
committed while he or she is the owner of it." 17 U.S.C. § 501(b).
The Second Circuit has interpreted this provision to mean that only
"(1) owners of copyrights and (2) persons who have been granted
exclusive licenses by owners of copyrights" can sue for copyright

18

infringement.  Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,
697 F.2d 27, 32 (2d Cir. 1982); see also Pannonia Farms, Inc. v.
USA Cable, 03 Civ. 7841, 2004 WL 1276842, at *5 (S.D.N.Y. June 8,
2004) (dismissing copyright action for lack of standing because
plaintiff corporation did not own the copyrights at issue).
Further, the Copyright Act requires that an assignment of copyright
ownership must be memorialized in writing and signed by the
parties.  17 U.S.C. § 204(a).

Big East was not a party to the 1986 Artist Agreement or
the 1987 Settlement Agreement and never received a written
assignment of copyrights.  The only entities with copyright
registrations in the compositions at issue are Zomba, whose
registrations are dated January 26, 1996 and B-Boy, whose
registrations are dated January 22, 1999.

Initially, Big East asserted ownership in the copyrights
by virtue of Allen's personal ownership of plaintiff and of Rock
Candy and B-Boy.  However, "under New York law, a parent
corporation may not pierce the corporate veil it set up for its own
benefit in order to advance the claims of its subsidiary."
Feinberg v. Katz, 99 Civ. 45, 2002 WL 1751135, at *5 (S.D.N.Y. July
26, 2002) (plaintiff "and its sole shareholder cannot bring claims
to recover for damages incurred by its subsidiary"); Diesel Sys.,
Ltd. v. Yip Shing Diesel Engineering Co., Ltd., 861 F. Supp. 179,
181 (E.D.N.Y. 1994) (New York corporation was not real party in

19

interest and lacked standing to sue on behalf of its sister corporation, even if sister corporation "was merely a shell corporation, wholly controlled by [New York corporation], this Court will not pierce the corporate veil"); Disston Co. v. Sandvik Aktiebolag, 589 N.Y.S.2d 442 (N.Y. App. Div. 1st Dep't 1992) ("A corporation cannot pierce its own corporate veil to benefit either the parent or a subsidiary").

In its opposition to Zomba's summary judgment motion and in support of its cross-motion, Big East for the first time contended that B-Boy Records and Rock Candy were merged into Big East in 2002 and no longer exist as separate entities. (Def's. Br. at 23, Allen Decl. ¶ 15). Big East then asserts that it has standing to sue for infringement by virtue of 17 U.S.C. § 204(a), which provides that a transfer of copyright may occur "by operation of law." The only support for this claim is the statement of Allen, the sole owner of Big East.

Big East did not file any document with the Secretary of State evidencing the claimed merger (Hayes Reply Decl. ¶ 2, Ex. A), as required by the New York Business Corporation Law § 904. This Court can take judicial notice of this government record. Torrens v. Lockheed Martin Services Group, Inc., 396 F.3d 468, 472 (1st Cir. 2005), Fed. R. Evid. 201(5)(2). Because the required documentation was not filed, the claimed merger does not qualify as an assignment by operation of law. H.K. Co. v. Mori Lee

20

Associates, Inc., No. 85 Civ. 9929, 1989 U.S. Dist. LEXIS 7104
(S.D.N.Y. June 23, 1989).

In addition, at his deposition on October 6, 2005, Allen
testified that Rock Candy Records, Rock Candy Music and B-Boy
Records, Inc. all still exist as separate companies:

Q.   Those entities, Rock Candy Records, Rock Candy
     Music and B-Boy Records, continue to exist, don't
     they?

A.   Yeah.  But they're controlled by Big East.

Q.   I see.  And when you say they're controlled by Big
     East could you tell me what you mean?   In other
     words, is there control because of some ownership
     or is there some agreement?

A.   Ownership.

Q.   Ownership, okay.  And do you know, if there any
     document assigning the rights of Rock Candy under
     the artist agreement to Big East?

A.   No.  The way I set up the companies was Big East
     was the overall umbrella control.   They had to
     follow through everything with all the companies.

Q.   I see.  Okay.  So when you told me before that you
     were the sole owner of these companies you meant
     you did that through Big East?

A.   No, each company individually.

Q.   Each company individually has stock?

A.   Yes.  I own it.

Q.   And the stock is issued and you own it?

A.   Yes.

Q.   And also own all the stock of Big East?

A.   Yes.

21

(Allen Dep. at 68-70).

In any case, the copyright registration for the compositions at issue is in the name of B-Boy Records. No assignment of copyright from B-Boy Records (or any other entity) to Big East has been adduced.

Given the requirements of law cited above, contradicted only by Allen's assertions which are contradictory and unsupported by documentary evidence, Big East has failed to present uncontested material facts to establish its standing. Its cross-motion for a declaration of copyright violation is therefore denied.

## Big East Has Failed To Establish Its Ownership

Big East has claimed that Paragraph Three of the 1987 Settlement Agreement grants the Allen Defendants 100% ownership of the "Criminal Minded" compositions. (Complt. ¶ 6). Paragraph Three provides:

> Artists hereby irrevocably and forever waive any and all royalties and/or other payments, including so-called performance and mechanical license payments, heretofore and hereafter accruing as may be due Artists from Defendants arising out of or in connection with the distribution by the Defendants of recordings embodying the performance of Artists and musical compositions written by Artists performed on the recordings listed in Schedule 'A' annexed hereto.

22

The provision allows the Allen Defendants to keep royalties that they otherwise would owe the members of BDP as a result of the Allen Defendants distributing recordings contained on the "Criminal Minded" album. "[A]n agreement concerning royalties does not constitute a 'transfer of copyright ownership' within the meaning of [the Copyright Act]." Para's-June, 921 F. Supp. at 1160. "Assignments of interest in royalties have no relationship to the existence, scope, duration or identification of a copyright, nor to 'rights under a copyright.'" Broadcast Music, Inc. v. Hirsch, 104 F.3d 1163, 1166 (9th Cir. 1997) (agreement assigning royalties was not transfer of copyright) (quoting 17 U.S.C. § 106 (listing rights under a copyright)).

The balance of the 1987 Settlement Agreement also confirms that BDP did not assign its copyrights to the Allen Defendants. Paragraph One of the agreement, provides in relevant part:

The management and artist's agreement which are the subject of the Civil Action are hereby terminated. Defendants nevertheless shall retain the right to distribute and exploit the recordings embodying the performance of Artists and musical compositions written by Artists performed in the recordings listed in Schedule 'A' annexed hereto only."

By the use of the word "retain," the Allen Defendants obtained only the limited rights that they previously held, i.e., the right to exploit and distribute the recordings on the "Criminal

23

Minded" album.  The only language in the 1987 Settlement Agreement
that grants "full right, title, and interest" in any intellectual
property rights is in Paragraph Five, which grants to the members
of BDP the right to use the trade name BDP.

Big East also has claimed that the Allen Defendants did
have a 50% interest in the "Criminal Minded" compositions because:
1) the 1986 Artist Agreement itself grants Rock Candy that
interest, and 2) BDP and Rock Candy executed a co-publishing
agreement which was lost in a fire at Allen's office.  (Complt. ¶
4).  However, the 1986 Artist Agreement does not grant Rock Candy
copyright ownership in BDP's compositions.  The agreement provides,
in relevant part:

> Any musical compositions written and/or composed by [BDP]
> which are recorded by [BDP] pursuant to this Agreement
> shall be co-published between [BDP's] publishing company
> to be designated and [Rock Candy's] music publishing
> affiliate to be designated pursuant to a co-publishing
> agreement entered into simultaneously herewith.

This one reference to publishing interests does not contain
language granting ownership rights in the compositions, nor does it
contain essential terms of the co-publishing.

As discussed above, Big East has not established beyond
dispute the terms or existence of the purported co-publishing
agreement.

24

Big East has contended that the 1987 Settlement Agreement and the 1987 Zomba Co-Publishing Agreement must be read together as though they were one transaction, and it seeks to rely on exclusion of third-party rights described in Schedule 2, claiming that such rights must refer to Rock Candy. (Big East Memo in Opp., pp. 10-14).

However, the parties are not the same, the subject matter is different as are the dates of execution. In This Is Me, Inc. v. Taylor, 157 F.3d 139 (2d Cir. 1998), relied on by Big East, all of the contracts at issue were related solely to the appearance of the actress Cicely Tyson in a Broadway play and were therefore involved in one transaction. In Commander Oil Corp. v. Advance Food Service Equipment, 991 F.2d 49 (2d Cir. 1993), another case relied on by Big East, the asset purchase agreement and lease involved in that case were both between the same parties, and also part of the same financial transaction. Here, Zomba was not a party to the settlement agreement, and Rock Candy was not a party to the Zomba Co-Publishing Agreement. Although in TVT Records v. Island Def Jam Music Group, 412 F.3d 82 (2d Cir. 2005), the two agreements did not have all the same parties, both agreements in that case were for the single purpose of producing one record album. Here, there are both separate parties and there are separate purposes to the agreements. Because they are two separate and distinct transactions, the agreements cannot be read together. See Lowell

25

v. Twin Disc., Inc., 527 F.2d 767 (2d Cir. 1975); Williams v. Mobil
Oil Corp., 445 N.Y.S.2d 172 (N.Y. App. Div. 2d Dep't 1981).

No explanation is given by Parker or Zomba to the
inclusion of the "Criminal Minded" compositions on Schedule 2 of
the Co-Publishing Agreement.   Paragraph 1(a) defined the
compositions listed on Schedule 1, which has not been provided,
"which have not been heretofore committed by written agreement to
any third party music publisher, it being understood that all such
musical compositions which have been heretofore committed by
written agreement to any third party are set forth in Schedule 2."
(Allen Dec., Ex 6).  It is noted that Paragraph 9(e) represented
that Parker and his affiliate wrote the compositions prior to the
term of the Co-Publishing Agreement.  (Allen Dec. Ex 6).  Whatever
the explanation of the inclusion on Schedule 2, it fails to
establish copyright ownership on Big East which is no way
identified as the "third party music publisher."  An assumption by
Big East does not substitute for a material fact.

Because Big East has failed to show undisputed evidence
of its copyright ownership, its cross-motion is denied.  Zomba is
entitled to summary judgment dismissing its complaint.

## Conclusion

For the reasons set forth above, the motion of Zomba to dismiss the complaint of Big East is granted and the cross-motion of Big East is denied.

It is so ordered.

New York, NY
September  2 9  , 2006

ROBERT W. SWEET
U.S.D.J.

27